[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 1, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14241

_____

BIA No. A26-267-297

JONATHAN O. MADU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Transfer from the United States District Court for the
Northern District of Georgia

_____

**(December 1, 2006)**

Before BIRCH, PRYOR and FAY, Circuit Judges.

BIRCH, Circuit Judge:

In this case, we determine whether a habeas petition challenging the

petitioner's detention and impending removal on the ground that he is not subject

to a removal order amounts to a "challeng[e] [to] a final administrative order of removal" within the meaning of section 106(c) of the REAL ID Act. The district court determined that it does, and hence transferred this case to us. We disagree, and join the Third Circuit in holding that a petitioner's assertion that he is not subject to an order of removal is distinct from a petitioner's challenge to a removal order for the purposes of the REAL ID Act. See Kumarasamy v. Att'y Gen., 453 F.3d 169, 172 (3d Cir. 2006). Accordingly, we vacate the district court's order transferring this case to us, and remand it to the district court for habeas proceedings pursuant 28 U.S.C. § 2241.

## I. BACKGROUND

Petitioner Jonathan O. Madu is a native and citizen of Nigeria. On 8 December 1981, Madu entered the United States on a non-immigrant student visa to attend Southern University in Baton Rouge, Louisiana. Madu's visa did not authorize him to work in the United States.

In May of 1986, approximately six months before the expiration of his visa, Madu was arrested by the Immigration and Naturalization Service ("INS") on charges of working without permission.[1] He was placed in deportation

---

[1] On 25 November 2002, President Bush signed into law the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ("HSA"). The HSA created a new Department of Homeland Security, abolished the INS, and transferred its functions to the new department. For convenience, however, we refer to the agency as the INS throughout this opinion.

proceedings and a hearing was scheduled for 5 May 1987. At Madu's deportation hearing, he admitted deportability, and requested that he be permitted to voluntarily depart in lieu of being deported. In support of his request for voluntary departure, Madu demonstrated that he had a one-way ticket for a 12 May 1987 flight to Lagos, Nigeria.

The Immigration Judge ("IJ") granted Madu's request for voluntary departure, and issued an order permitting Madu to voluntarily depart by 5 June 1987 "in lieu of an order of deportation." R1 at 6. The IJ's order further provided that if Madu failed to voluntarily depart by 5 June 1987, a deportation order would automatically come into effect. The order, however, stated it would not give rise to an order of deportation if Madu voluntarily departed by the required date.

Madu claims that, subsequently, he obtained a Mexican visa and entered Mexico between 15 May and 20 May 1987, thereby complying with the IJ's order. He further alleges that on 20 May 1987 he visited the United States Embassy in Mexico City, where he applied for a visa to return to the United States. He states that the visa was denied, and the embassy stamped his passport to reflect that he applied for and was denied a visa. In support of these factual claims, Madu attached a copy of the passport to his habeas petition, bearing the stamp he says he received on 20 May 1987 at the United States embassy in Mexico City. Madu contends that the stamp proves he was in Mexico on 20 May 1987, that therefore

3

he complied with the IJ's voluntary departure order, and, as a result, no deportation order came into being.

On 12 August 1987, the INS sent a letter to Nigeria, addressed to:

> Jonathan Onyema MADU
> Okai, Umuna, Okigwe
> Imo State, Nigeria.

R1 at 24. The letter instructed Madu to "[m]ail or take it to the office of the nearest American Consul and ask him to return it to [the INS]." Id. The INS did not receive a response to the letter. Madu states that he did not respond because he chose to depart the United States for Mexico rather than Nigeria, as the government concedes was his right. At some point after the INS sent the letter to Nigeria and failed to receive a response, the INS determined that Madu must not have complied with the voluntary departure order, and, therefore, that the IJ's order had converted into a deportation order.

After the United States Embassy in Mexico City denied his application for a visa, Madu reentered the United States at the Mexican border, without inspection. On 31 July 2003, Madu filed an application for adjustment of status based upon his marriage to a United States citizen, and his wife filed a visa petition on his behalf. On 24 February 2004, Madu and his wife arrived for a scheduled interview regarding the adjustment of status and visa applications. Upon their arrival, the INS arrested Madu on the basis of the putatively outstanding deportation order.

The INS began making arrangements to remove Madu to Nigeria, and denied his application for adjustment of status and his wife's application for a visa on his behalf on the ground that Madu was subject to an outstanding deportation order at the time of his marriage. Madu has been in the custody of the INS since his 24 February 2004 arrest.

On 17 May 2004, Madu filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Northern District of Georgia. Madu also filed, and the district court granted, an emergency motion to stay his deportation pending adjudication of his habeas petition. In his habeas petition, Madu claimed that the INS was holding him in violation of his constitutional rights of substantive and procedural due process, and he sought an order releasing him from detention, enjoining the INS from deporting him, and setting aside the denial of the adjustment of status and visa petitions. In its response to Madu's habeas petition, the government argued both that Madu failed to depart as required by the IJ's order, and that even if he had departed, the IJ's original order could be "reinstate[d]" under 8 U.S.C. § 1231(a)(5).

On 11 May 2005, President Bush signed into law the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231. Section 106(c) of the REAL ID Act provides in pertinent part:

5

> If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case . . . to the court of appeals for the circuit in which a petition for review could have been properly filed under [8 U.S.C. § 1252 or 8 U.S.C. § 1101].

Shortly after the enactment of the REAL ID Act, the government filed a motion to transfer the case to the court of appeals, arguing that Madu's habeas petition was actually a "challenge[] [to] his final order of deportation." Respt.'s Supp. Resp. to Petr.'s Writ of Habeas Corpus and Mot. to Transfer at 4. In response, Madu argued that "[t]he underlying basis of [his] petition [was] not a challenge to a final order of deportation or removal but, that Respondent[s] are holding him against his constitutional rights under the fictitious pretense that he is subject to a final order of deportation." Petr.'s Reply to Respt.'s Supp. Resp. to Petr.'s Writ of Habeas Corpus and Opp. to Mot. to Transfer at 2 (emphasis in original). The district court granted the government's motion to transfer. The court found that the central dispute was whether there was an extant order of removal, and reasoned that a dispute over the existence of a removal order is tantamount to a challenge to a removal order within the meaning of Section 106(c) of the REAL ID Act. Accordingly, the district court determined that transfer of the case to this court was required.

6

## II. DISCUSSION

Upon transfer of this case to our court, the government abandoned its argument that it may reinstate a removal order against Madu even if he left the country as required by the voluntary departure order. The government's sole remaining argument before us is that under the REAL ID Act, federal courts lack jurisdiction to entertain Madu's habeas petition. For the reasons discussed below, we find that the REAL ID Act does not apply, and the district court retains jurisdiction under 28 U.S.C. § 2241.

### Jurisdiction

Before we address the merits of the parties' arguments, we must first determine whether we possess subject matter jurisdiction over this case. See Resendiz-Alcaraz v. U.S. Att'y Gen, 383 F.3d 1262, 1266 (11th Cir. 2004) ("Before we can proceed to the merits of the petition, we must first consider whether we have subject matter jurisdiction to hear the petition at all."). Thus, we must address whether the REAL ID Act provides us with jurisdiction, and whether the district court's transfer of this case to us was therefore proper. Madu cites 8 U.S.C. § 1252(a)(5) as the basis for jurisdiction, while the government argues that 8 U.S.C. §§1252(b)(9) and 1252(g) divest us of jurisdiction, and that the INS's

actions in this case are not subject to judicial review in any forum.[2] We consider

these arguments below.

　　1.　Section 106(c) of the REAL ID Act and 8 U.S.C. § 1252(a)(5)

　　The REAL ID Act required that habeas petitions "challenging [] final

administrative order[s] of removal" that were pending before a district court on the

effective date of the Act be transferred to the appropriate court of appeals and

converted to petitions for review.　Pub. L. No. 109-13, Div. B, § 106(c).　The

REAL ID Act also added subsection (a)(5) to 8 U.S.C. §1252, which provides that

"a petition for review filed with an appropriate court of appeals in accordance with

this section shall be the sole and exclusive means for judicial review of an order of

removal . . . ."　Thus, to determine whether the REAL ID Act applies here, we must

determine whether Madu seeks review of an order of removal.　In his habeas

petition, Madu argues that his detention and pending removal are unconstitutional

because he is not subject to an order of removal.　We join the Third Circuit in

---

[2] The government argued in the district court that Madu seeks review of an order of removal, and that the jurisdictional provisions of the REAL ID Act therefore apply to this case. Now that the government's motion for transfer has been granted and the case is before our court, the government makes the opposite argument. Specifically, the government now argues that Madu challenges only the execution of the alleged removal order, not the order itself, and contends that we therefore lack jurisdiction. While an argument made for the first time in the court of appeals is generally waived, see Sterling Fin. Inv. Group, Inc. v. Hammer, 393 F.3d 1223, 1226 (11th Cir. 2004) (citation omitted), arguments regarding subject matter jurisdiction may be raised at any stage of the proceedings. McMaster v. United States, 177 F.3d 936, 939 (11th Cir. 1999) (citation omitted). Thus, we will consider the government's newly raised argument that we lack subject matter jurisdiction.

8

holding that a petitioner who contests the very existence of an order of removal does not seek "review of an order of removal" within the meaning of the REAL ID Act. See Kumarasamy, 453 F.3d at 172 ("Kumarasamy is not seeking review of an order of removal. Rather, he claims that his deportation was illegal because there was no order of removal.") (emphasis in original).

In Kumarasamy, an alien filed a habeas petition claiming that he had been illegally removed, on the ground that there was no order of removal against him. Id. at 170-71. The district court dismissed the habeas petition, and Kumarasamy appealed. Id. at 171. While his appeal was pending, the REAL ID Act was enacted. Id. The government argued that Kumarsamy's appeal sought "review of an order of removal" within the meaning of 8 U.S.C. § 1252(a)(5), and that, therefore, the court was required to treat the appeal as a petition for review. Id. at 171-72. The Third Circuit disagreed, stating:

> Kumarasamy is not arguing that if the removal order in his case was validly issued, that order does not lawfully authorize his removal from the United States--he is not, in other words, seeking review of a removal order. Instead, Kumarasamy is arguing that his removal was improper because there was no removal order at all . . . .

Id. at 172. Because Kumarasamy did not seek review of an order of removal, the court found that the REAL ID Act did not apply, and it did not convert his appeal into a petition for review. Id.

9

We find the Third Circuit's reasoning persuasive. Here, Madu argues that he left the United States by the deadline set forth in the IJ's voluntary departure order, and that, as a result, the voluntary departure order never became a removal order. Accordingly, the question presented by Madu's habeas petition is whether there is a removal order at all, which, as the Third Circuit explained in Kumarasamy, is a different question than whether an extant removal order is lawful. See id. Because we find that Madu does not challenge "a final administrative order of removal" or seek review of a removal order, neither section 106(c) nor section 1252(a)(5) apply to this case. Consequently, we lack jurisdiction, and the district court retains jurisdiction under 28 U.S.C. § 2241 to hear Madu's habeas petition.

2. 8 U.S.C. § 1252(b)(9)

The government argues that 8 U.S.C. § 1252(b)(9) deprives the district court of jurisdiction over Madu's habeas petition. Specifically, the government contends that because this case "aris[es] from . . . action[s] taken . . . to remove an alien from the United States," section 1252(b)(9) applies, and expressly prohibits habeas review under 28 U.S.C. § 2241. Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

10

Moreover, the following sentence was added by section 106(a)(2) of the REAL ID Act:

> Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision . . . to review such an order or such questions of law or fact.

The language of section 1252(b)(9) unambiguously divests all courts of habeas jurisdiction over cases that fall within its purview. Yet 8 U.S.C. § 1252(b) is equally clear that subsection (b)(9) applies only "[w]ith respect to review of an order of removal." See INS v. St. Cyr, 533 U.S. 289, 313, 121 S. Ct. 2271, 2286 (2001) (citing 8 U.S.C. § 1252(b)); see also Bejacmar v. Ashcroft, 291 F.3d 735, 738 (11th Cir. 2002) (referring to "the language of § 1252(b)(9), which applies 'to review of an order of removal under subsection (a)(1)'" (citation omitted)). Moreover, while the REAL ID Act amended § 1252(b)(9) by adding an explicit bar on habeas jurisdiction over certain claims, the Act did not expand the scope of (b)(9) by making it applicable to cases other than those involving "review of an order of removal." Because section 1252(b)(9) applies only "[w]ith respect to review of an order of removal," and this case does not involve review of an order of removal, we find that section 1252(b)(9) does not apply to this case.

3.  8 U.S.C. § 1252(g)

The government also argues that section 1252(g) bars any judicial review of the INS's actions in this case. Specifically, the government contends that Madu's habeas petition is actually a challenge to the execution of a removal order (as distinguished from a substantive challenge to the validity of a removal order, or, as here, a challenge to detention on the ground that there is no removal order). 8 U.S.C. § 1252(g) states:

> [N]otwithstanding . . . section 2241 of title 28, United States Code, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

While this provision bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions. See Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 485 n.9, 119 S. Ct. 936, 944 n.9 (1999) ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."); see also Kwai Fun Wong v. United States, 373 F.3d 952, 964 (9th Cir. 2004) ("[W]e have held that the reference to 'executing removal orders' appearing in § 1252(g) should be interpreted narrowly, and not as referring to the underlying merits of the removal decision.") (citation

12

and quotation marks omitted). Here, Madu does not challenge the INS's exercise of discretion. Rather, he brings a constitutional challenge to his detention and impending removal. See Pet. for Writ of Habeas Corpus at ¶ 21 (alleging that the "detention and imminent deportation of Petitioner are denials of his substantive right to due process . . . ."). Accordingly, section 1252(g) does not apply.

### III. CONCLUSION

In this case, Madu does not seek review of an order of removal, and the REAL ID Act therefore does not apply. Furthermore, neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) divest the district court of jurisdiction. Because the REAL ID Act does not apply, the only issue remaining to be determined in this case is whether Madu voluntarily departed the United States within the time period required by the IJ's voluntary departure order. The government conceded at oral argument that if he did so, Madu is not subject to a removal order. Accordingly, we **VACATE** the district court's order transferring this case to us, and **REMAND** it to the district court for habeas proceedings pursuant 28 U.S.C. § 2241, including an evidentiary hearing to determine whether Madu complied with the voluntary departure order by leaving the United States by 5 June 1987.

**VACATED AND REMANDED**.