

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2007

# Nnadika v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-3915

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Nnadika v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1151.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1151

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3915

———

DAVID NNADIKA,
                                    Petitioner
            v.

ATTORNEY GENERAL OF THE UNITED STATES**,
                                    Respondent

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A73-645-622)
Immigration Judge: Hon. Daniel Meisner

Initially docketed as a Habeas Petition in the United States
District Court for the District of New Jersey at D. C. No.
05-cv-01862 and Transferred to this Court Pursuant to the
REAL ID ACT

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2007

Before: SLOVITER and AMBRO, Circuit Judges, and
POLLAK,* District Judge

---

      * Hon. Louis H. Pollak, Senior Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by
designation.

      ** Because we have converted the present case into a
petition for review, we are required to substitute the Attorney
General for the current respondents (BCIS and Secretary of
Homeland Security).

(Filed April 27, 2007)

_____

Robert Frank
Frank & York
Newark, N.J. 07102

      Attorney for Petitioner

Colette R. Buchanan
Office of United States Attorney
Newark, N.J. 07102

      Attorney for Respondents

_____

OPINION OF THE COURT

_____

SLOVITER, Circuit Judge.

This matter comes before this court after having been transferred from the United States District Court for the District of New Jersey pursuant to the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (codified as amended at 8 U.S.C. § 1252). The transfer presents a procedural issue that has been addressed only recently. Some review of the history of this case is necessary to understand what is at issue.

**I.**

David Nnadika, who is a native and citizen of Nigeria, filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief in the District Court. Nnadika named as respondents Michael Chertoff, Secretary of the Department of Homeland Security; Michael J. Garcia, Assistant Secretary of U.S. Immigration Customs Enforcement ("USCIS"); Michael Anderson, Interim Field Office Director USCIS; William Joyce, Officer in Charge of Elizabeth [New Jersey] Detention Facility; Alberto Gonzales, Attorney General; and Eduardo Aguirre, Assistant Secretary USCIS. Nnadika's Petition/Complaint made essentially two claims, as appears from

the title.  He sought to enjoin respondents from removing him and also sought an order to USCIS to grant reconsideration and approval of his form I-730 Asylee Relative Petition.

Nnadika is a 47-year-old male who participated in anti-government protests in his native Nigeria.  In November of 1993, Nnadika left Nigeria and went to Kenya with his then-wife who, at the time of the immigration hearing, remained in Kenya.  He entered the United States on September 17, 1994 without inspection and submitted an application for asylum on or about November 7, 1994.  His administrative asylum application was not granted and he was referred to an Immigration Judge ("IJ").  At that hearing, Nnadika testified that he was a member of the Social Diplomatic Party ("SDP"), a political organization in Nigeria that supported the candidacy of an individual who was elected to the Nigerian presidency in 1993, but whose election was not recognized by the Nigerian dictator.  Nnadika testified that the Nigerian military police shot his father, another SDP activist, during a protest in November of 1993, and that Nnadika himself feared that he would be killed if deported to Nigeria.

The IJ noted that Nnadika had not submitted any evidence to establish his or a relative's membership in the SDP or any political organization, or to corroborate the shooting.  The IJ found that Nnadika had not established more than "general problems" in Nigeria to support his request for asylum.  App. at 47.  Because Nnadika had not presented evidence of past persecution in Nigeria despite having had nearly two years to document the background of his case, the IJ held that he had not met his burden of proof and denied the request for asylum and withholding of deportation.[1]  He advised Nnadika that any appeal must be filed by May 13, 1996.

Nnadika did not file his notice of appeal to the Board of Immigration Appeals until May 22, 1996, which the BIA dismissed as untimely because it had not been filed within ten days after the IJ's decision was rendered, as required by 8 C.F.R. §§ 3.3, 3.38(b), and 242.21(a).

---

[1] The IJ granted Nnadika's alternative application for voluntary departure with a departure deadline of June 3, 1996.

3

Nnadika did not voluntarily depart by June 3, 1996, as ordered by the IJ. Instead, he remained in the United States and married Umaka Hilda Umonnakwe ("Umonnakwe") in Jersey City, N.J., on November 15, 1997. Umonnakwe was granted asylum by an IJ in New York City on March 19, 1998.[2]

On April 16, 1999, Nnadika filed a motion to reopen his deportation proceedings so that he would have the opportunity to receive asylee status based on his wife's asylum status. The IJ denied Nnadika's motion on May 25, 1999, stating that the Immigration Court did not have jurisdiction under the circumstances to adjudicate a derivative asylum request and that Umonnakwe had not filed form I-730 with the INS as required for a spouse to receive asylee status. On December 13, 1999, the BIA affirmed the IJ's decision to deny Nnadika's motion to reopen, agreeing with the INS that Nnadika's motion to reopen had not been timely filed under 8 C.F.R. § 3.23(b).

Undeterred, Umonnakwe filed an I-730 form on behalf of Nnadika on December 11, 2000 and again on December 18, 2001. Both were denied as untimely filed, having been filed more than two years after Umonnakwe was granted asylum on March 19, 1998. The denial letters stated that "[i]t does not appear that circumstances exist which would warrant the extension of the filing period. Therefore, you are ineligible to file Form I-730 at this time, and this petition may not be approved." App. at A. They further stated, however, that if Umonnakwe could overcome the grounds for denial in the future, she could refile with the appropriate documentation.

---

[2] The Government notes in its brief that Nnadika's marital situation is somewhat unclear from the record. At his immigration hearing on May 3, 1996, Nnadika presented three letters that he said were from his wife, Amaka Nnadika. He also testified that at that time she was living in Kenya. The marriage license issued to Nnadika and Umonnakwe, dated November 21, 1997, lists Nnadika's marital status as widowed. The record does not contain any clarification, but we need not pursue that matter as it is not relevant to the issue before us.

Nnadika, having been unsuccessful in his applications at the agency level, then turned to the District Court and filed the above referenced Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. The Petition/Complaint alleged that the District Court had habeas jurisdiction to review Nnadika's detention pursuant to 28 U.S.C. § 2241, and that it may exercise jurisdiction pursuant to 28 U.S.C. § 1331 and mandamus jurisdiction pursuant to 28 U.S.C. § 1361. The Petition/Complaint also claims that he is entitled to review of deportation as a matter of constitutional right and under the common law.

To the extent that the complaint seeks a writ of habeas corpus, Nnadika alleged that he has been in the physical custody of the Newark District of Immigration and Customs Enforcement ("ICE"), detained at the Elizabeth Detention Facility in Elizabeth, New Jersey, since March 2005 where he has been held pursuant to ICE's contract to house immigration detainees. He alleged that he exhausted his administrative remedies and is under an order of deportation by the Immigration Judge who denied his motion to reopen and stay deportation. In addition, Nnadika's Petition claims that he is entitled to derivative asylum under the INA but that his form I-730 Asylee Relative Petition has been denied for having been filed out of time. He asserts mandamus jurisdiction pursuant to 28 U.S.C. § 1361.

The District Court heard oral argument on June 27, 2005 and entered an order dated June 29, 2005 that denied the Government's motion to reconsider and vacate the stay of removal; that denied the petition for habeas corpus "insofar as it challenges the detention of the Petitioner by Respondents," that ordered that "pursuant to the REAL ID Act . . . the remainder of the Petition, which challenges the Order of Deportation or Removal which was entered following proceedings before the immigration court in Newark, New Jersey, be and hereby is [transferred] to the United States Court of Appeals for the Third Circuit to be treated as a 'Petition for Review.'" Finally, the Court ordered that the stay of removal it had previously ordered remain in effect during and after the transfer of the case to the Court of Appeals, noted that the Respondents may move in this

5

court to vacate the stay, and ordered the case closed on the District Court's docket. We consider in the first instance the question of jurisdiction, both in this court and in the District Court, in light of the unusually titled document Nnadika filed.

## II.

When Congress enacted the REAL ID Act, it included the following:

> If an alien's case, brought under section 2241 of title 28, United States Code, and challenging <u>a final administrative order of removal, deportation, or exclusion</u>, is pending in a district court on the date of the enactment of this division [May 11, 2005], then the district court <u>shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion)</u> to the court of appeals for the circuit in which a petition for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act (8 U.S.C. 1252 [subsec. (b)(2) of this section]), as amended by this section, or under section 309(c)(4)(D) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note). The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242 . . . .

8 U.S.C. § 1252 Note, <u>see</u> <u>also</u> 119 STAT. 311 (2005) (emphasis added).[3]

The REAL ID Act thus distinguishes between those challenges brought by an alien to "a final administrative order of removal, deportation, or exclusion," and those challenges made to other aspects of the administrative proceeding. Because the REAL ID Act is relatively recent legislation, the courts have just

---

[3] The fact that the Note was never codified does not detract from its force. <u>See</u> <u>United States v. Welden</u>, 377 U.S. 95, 98 n.4 (1964).

6

begun to focus on the distinction. This court did so to some extent in <u>Kumarasamy v. Att'y Gen.</u>, 453 F.3d 169 (3d Cir. 2006). Kumarasamy had been charged with being subject to removal as a non-immigrant who remained in the United States beyond the authorized time. <u>Id.</u> at 170. He sought asylum, protection under the Convention Against Torture ("CAT"), and withholding of removal. <u>Id.</u> The IJ denied the major portion of his application but granted withholding of removal to Sri Lanka. <u>Id.</u> at 171. Kumarasamy remained in this country for four years. Then, on motion of the Department of Homeland Security ("DHS"), the IJ amended the order to reflect an underlying order of removal that had been omitted from the original order. <u>Id.</u> Thereafter, Kumarasamy was deported to Canada notwithstanding the IJ's expressed intention to stay the deportation. <u>Id.</u> Kumarasamy filed a petition for a writ of habeas corpus in the District Court for the District of New Jersey which was removed to this court, ostensibly under the REAL ID Act. <u>Id.</u> at 171-72.

The Government argued that because of the provisions of the REAL ID Act, we were obliged to treat the appeal as a Petition for Review. We disagreed, reasoning that "Kumarasamy is not seeking review of an order of removal. Rather, he claims that his deportation was illegal because there was *no* order of removal." <u>Id.</u> at 172 (emphasis in original). We recognized that although an order of removal "was issued, albeit belatedly," it was Kumarasamy's argument that his removal was improper because there was no such order. <u>Id.</u> We held that "[u]nder the REAL ID Act, by its own terms, we have jurisdiction only in those cases in which the petitioner seeks review of a final order of removal. " <u>Id.</u> Because Kumarasamy was not seeking review *of* a removal order, we declined to convert the appeal into a petition for review.[4]

The decision in <u>Kumarasamy</u> was followed by the Court

---

[4] On the merits, we held that Kumarasamy was not in custody when he filed his petition for habeas corpus (having been removed to Canada) and thus we affirmed the order of the District Court dismissing his habeas petition for lack of jurisdiction. <u>Kumarasamy</u>, 453 F.3d at 172-73.

of Appeals for the Eleventh Circuit in <u>Madu v. Att'y Gen.</u>, 470 F.3d 1362 (11th Cir. 2006). In that case the petitioner, who previously had been placed in deportation proceedings on the charges of working without permission, had been granted permission to voluntarily depart in lieu of being deported. <u>Id.</u> at 1364. He chose to depart to Mexico City, but upon his reentry to this country without inspection, he was detained. Madu argued that he had complied with the voluntary departure order by leaving the United States by June 5, 1987, as directed by the IJ's order, and thus he was not subject to a removal order when he reentered the country. <u>Id.</u> He filed a petition for habeas corpus claiming that the Government was "holding him against his constitutional rights under the fictitious pretense that he is subject to a final order of deportation." <u>Id.</u> at 1365 (internal citation and quotation marks omitted). The Court of Appeals rejected the Government's contention that the court had jurisdiction pursuant to the REAL ID Act. It adopted the reasoning of <u>Kumarasamy</u>, noting that "the question presented by Madu's habeas petition is whether it is a removal order at all," which it held "is a different question than whether an extant removal order is lawful." <u>Id.</u> at 1367 (internal citation omitted). It concluded that because Madu was not challenging "a final administrative order of removal" or seeking review of a removal order, it lacked jurisdiction under the REAL ID Act. <u>Id.</u>

The decision of the Court of Appeals for the Eighth Circuit in <u>Haider v. Gonzales</u>, 438 F.3d 902 (8th Cir. 2006), presented a contrasting scenario. Haider sought to challenge an order in absentia removing him to Bangladesh after he failed to appear at his removal hearing. He contended that he had not received the required notice of the date and time for the hearing, in violation of his due process rights. <u>Id.</u> at 906. His contention was rejected both by the IJ, who denied his motion to reconsider, and the BIA, which affirmed. Haider filed a petition for habeas corpus, that was transferred to the Court of Appeals pursuant to the REAL ID Act. <u>Id.</u> Haider's challenge to the jurisdiction of the Court of Appeals was rejected. The Court of Appeals agreed with the conclusion of the District Court "that [Haider]'s challenge to the constitutionality of the notice provided to him, is, in effect, a challenge to the ultimate order of removal." <u>Id.</u> at 910. It concluded that the District Court had complied with the

8

REAL ID Act by transferring Haider's habeas case because his petition for a writ of habeas corpus did nothing more than attack the IJ's removal order.  Id.

The Haider decision was distinguished by the Court of Appeals for the Sixth Circuit in Kellici v. Gonzales, 472 F.3d 416 (6th Cir. 2006).  The Kellicis' applications for withholding of removal and relief under the Convention Against Torture ("CAT") were denied by the IJ.  Id.  The Kellicis' motion for reconsideration was denied by the BIA, and their subsequent Petition for Review in the Court of Appeals was also denied.  Id. at 417.  Thereafter, ICE sent a letter to Kellici directing him to report to the INS office by December 13, 2004, but that letter was returned by the Postal Service marked "Attempted Not Known."  Id.  Soon thereafter, ICE officials arrested Ardian Kellici and took him into custody.  Id.

He filed a petition for writ of habeas corpus in the district court, claiming that he never received notice of the report date. The district court sua sponte transferred the Kellicis' cases to the Court of Appeals pursuant to the REAL ID Act.  Id.  The Government moved to dismiss and remand the case to the district court on the ground that the transfer of the Kellicis' cases was not authorized by the REAL ID Act.  Id.  The Court of Appeals agreed, holding that the habeas petition was not covered by the plain language of the Act.  As the court noted:

> The constitutional violation alleged in the initial habeas petition was that "the government's failure to deliver or provide to Petitioner notice of the date, time, and place of hearing denied him due process of law. . . ." A stay of deportation was neither sought nor granted, and, on February 16, 2005, before the government received his habeas petition, Ardian was deported to Albania. Marsida Kellici filed a similar habeas petition on February 22, 2005. She alleged that "based upon what happened to her husband, [she] is subject to a final Order of Deportation, and is therefore in custody for purposes of [28 U.S.C.] § 2243." Like Ardian's petition, her petition challenged only the government's failure to provide notice as she "did not receive a copy of the Order to Appear and thus

9

lacked knowledge of the hearing."

472 F.3d at 417.

According to the Court, the Kellicis' petitions challenged only the constitutionality of the arrest and detention, not the underlying administrative order of removal. Therefore, it held it lacked jurisdiction over the due process claims and remanded them to the district court. Id. at 420.

Reference to the legislative history of the REAL ID Act provides clarification of the applicability of its jurisdiction-stripping and transfer provisions. It also clarifies which cases are not to be transferred. The Congressional Report states that the provisions directing the transfer to the Courts of Appeals of habeas cases "challenging a final administrative order of removal," 8 U.S.C. § 1252 Note, Transfer of Cases, were not intended to "preclude habeas review over challenges to detention that are independent of challenges to removal orders." H. R. Cong. Rep. No. 109-72 at 2873 (May 3, 2005). See Hernandez v. Gonzales, 424 F.3d 42 (1st Cir. 2005). When the case does not challenge the administrative removal order, it does not fall within the transfer provision of the REAL ID Act and the District Court retains jurisdiction. See Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006) (declining to transfer); Sissoko v. Rocha, 440 F.3d 1145 (9th Cir. 2006) (same).

We must be careful to maintain the distinction Congress made in the REAL ID Act between those challenges that must be transferred and those that must be retained in and decided by the district court. Arguably, any challenge by an alien who seeks to remain in this country could be construed as challenging his or her "removal, deportation, or exclusion," but such a broad interpretation would be counter to Congress' express intent. Instead, only challenges that directly implicate the order of removal, such as the challenge to the notice of the removal hearing in Haider, are properly the subject of transfer under the REAL ID Act.

### III.

10

We thus turn to consider whether the transfer of Nnadika's case was appropriate. In directing the transfer of Nnadika's Petition/Complaint, the District Court did not discuss the challenge. Nonetheless, we must decide the question, because it implicates our own jurisdiction which is always open to question. On its face, Nnadika's Petition/Complaint does appear in part to challenge the order of removal, a challenge that would fall within our jurisdiction. It follows that the District Court did not err in directing the transfer. However, the situation appears to have changed on appeal. The Government notes in its brief on appeal that "[Nnadika] does not challenge a final order of removal or deportation in this Court." Respondent's Br. at 8. Nnadika's brief asserts that there are three issues presented:

> 1. That USCIS' failure to properly adjudicate the asylee relative petition, as it is required to pursuant to their own regulations, prevented the Petitioner from reopening his case before the Immigration Judge.

> 2. Assuming in arguendo that the asylee relative petition was filed late, USCIS should be compelled, pursuant to its own regulations, to address the humanitarian grounds for accepting a late-filed I-730 petition.

> 3. USCIS' two-year deadline for filing an I-730 petition is an arbitrary exercise of agency authority, and is contrary to the spirit and purpose of asylum law. As such, it is an invalid exercise of agency authority.

Petitioner's Br. at 1-2.

The argument section of Nnadika's brief expounds on these three issues. Of course, if Nnadika is unsuccessful in his effort to get relief from the denial of the I-730 petition, the result will undoubtedly be deportation, but the arguments made point to no legal error in the final order of removal – namely, the BIA order of December 13, 1999 affirming the IJ's denial of Nnadika's motion to reopen. Accordingly, Nnadika's petition for review of the order of removal must be denied as without merit. To the extent that Nnadika seeks declaratory and

injunctive relief directed to the denial of his I-730 petition, that claim does not fall within the REAL ID Act's authority for transfer and should have remained with the District Court. To the extent that Nnadika is detained as a result of the denial of the I-730 petition, the claim would appear to fall within the District Court's mandamus jurisdiction.

We note, however, that the Government also argues that "under 8 U.S.C. § 1252(a)(2)(B)(ii), review of the decision to deny the petition for asylee relative status is barred because it is a decision which is specified to be in the discretion of the Secretary of Homeland Security or the Attorney General." Respondent's Br. at 11. Because that claim was improperly transferred under the REAL ID Act, we do not have jurisdiction over it. We leave to the District Court consideration of the Government's argument in the first instance. Ordinarily, we would assume that the portion of the case that should not have been transferred remains in the District Court. However, the District Court's order closed the case. To avoid any uncertainty, in an abundance of caution, we will remand that portion of the Petition/Complaint that challenges the decision with respect to the I-730 petition. By remanding, we do not suggest that we reject the Government's argument that the issue is not subject to judicial review. We will deny the remaining portion of the Petition for Review.