

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-6-2007

# Kolkevich v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 06-2624

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Kolkevich v. Atty Gen USA" (2007). *2007 Decisions.* Paper 351.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/351

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2624
_____

VLADISLAV KOLKEVICH,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA No. A71-230-359
Immigration Judge:  Jill H. Dufresne

Initially Docketed as an Appeal from
EDPA No. 06-cv-1738
Prior to the Enactment of the Real ID Act of 2005

_____

Argued on July 11, 2007
Before: RENDELL, AMBRO, and NYGAARD*,
<u>Circuit Judges</u>.

(Filed September 6, 2007 )

Steven A. Morley      **[ARGUED]**
Morley, Surin & Griffin
325 Chestnut Street
Suite 1305-P
Philadelphia, PA   19106

*Counsel for Petitioner*
*Vladislav Kolkevich*


Richard M. Bernstein      **[ARGUED]**
Office of Untied States Attorney
615 Chestnut Street
Philadelphia, PA   19106

*Counsel for Respondent*
*Attorney General of the United States*

_____
  * Honorable Richard L. Nygaard, Senior Judge of the
    United States Court of Appeals for the Third Circuit,
    participated via video conference.

————

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

At issue in this case are the rights of a criminal alien to challenge the final order of removal entered against him by the Attorney General, notwithstanding the fact that the passage of the REAL ID Act of 2005 cut off Petitioner's right to file a petition for habeas corpus relief. The Government argues that we are without jurisdiction to hear Petitioner's tardy challenge to the agency's removal order. Petitioner argues, however, that, were we to accept the Government's position, he would be without any opportunity for judicial review whatsoever and, therefore, that such an interpretation of REAL ID would constitute a Suspension Clause violation. Although we agree with Petitioner that the Government's interpretation of REAL ID would have constitutional ramifications, we nevertheless cannot accept his argument that he had an unlimited time in which to complain of the removal order. Therefore, we hold that Petitioner did not file for review in a timely fashion and, consequently, that we are without jurisdiction. We will accordingly dismiss the Petition.

3

## I. Factual and Procedural History

Petitioner Vladislav Kolkevich is a twenty-five-year-old male native and citizen of Russia who arrived in the United States with his mother and father on March 11, 1994 at the age of thirteen. Kolkevich became a lawful permanent resident on May 3, 1995. Although both of his parents have since become United States citizens, Kolkevich has not achieved that status. On June 18, 2001, Kolkevich was convicted in the Philadelphia Court of Common Pleas of two counts of robbery, two counts of criminal conspiracy, one count of aggravated assault, and one count of receiving stolen property. He was then sentenced to a term of 4½ to 10 years in prison and remains incarcerated.

On May 23, 2002, the then-Immigration and Naturalization Service ("INS") issued Kolkevich a Notice to Appear, charging him, under Immigration and Nationality Act ("INA") §§ 237(a)(2)(A)(ii) and (iii), as removable for having been convicted of multiple crimes of moral turpitude and having been convicted of an aggravated felony. Kolkevich conceded removability on each ground, but requested deferral of removal under the Convention Against Torture ("CAT"), pursuant to 8 C.F.R. §§ 1208.16-18.

An Immigration Judge ("IJ") took testimony on this claim on December 18, 2003, and granted Kolkevich relief on February 26, 2004. The IJ's ruling was based almost entirely on her favorable view of the testimony given by Kolkevich's expert

4

witness, Nickolai Butkevich, a scholar and country-watcher with knowledge of anti-Semitism in the contemporary former Soviet Union. Butkevich testified that police use torture "quite often" against those whom they choose to detain. Appx. at 142. He also stated that Kolkevich would be a likely candidate for arbitrary detention because of his status as a criminal deportee, a Jew, and a Chechen as well as his lack of a financial support system in the country. Butkevich opined that, because Kolkevich combined each of these four independently problematic traits, he was a target for corrupt police and, therefore, more likely than not to be tortured. Additionally, the IJ also relied on the State Department's Country Report on Russia, noting "numerous statements in the Report" reflecting the prevalence of arbitrary arrest, police corruption, torture, and discrimination against Chechens and Jews. Appx. at 53-55.

The Government appealed the IJ's decision, and on March 21, 2005, the Board of Immigration Appeals ("BIA") reversed and ordered Kolkevich removed to Russia. The BIA found, in part, that the IJ erred by relying so heavily on Butkevich's testimony since, in the BIA's view, Butkevich's expertise was in "the treatment of Jews in the former Soviet Union," rather than in matters such as police function and rule of law that were integral aspects of Kolkevich's claim. Appx. at 37. Additionally, the BIA found that evidence of the existence of anti-Semitic and anti-Chechen sentiment in Russia, *in general*, was insufficient to establish that Kolkevich, "*in particular*, will face torture at the direction of, or with the

5

acquiescence of, the Russian government." *Id.* (emphasis added).

Because the BIA's decision both reversed the IJ and ordered Kolkevich removed to Russia, it was the Agency's final order and, therefore, the order from which Kolkevich could have brought an appeal. At this point, as will be explained in greater detail below, Kolkevich had only one vehicle by which to challenge the BIA's decision: a § 2241 habeas corpus petition filed in a United States district court, which could have been filed at any time, without limit, following issuance of the order of removal. However, this changed dramatically just 51 days after the BIA issued Kolkevich's final order of removal. On May 11, 2005, President Bush signed into law the REAL ID Act of 2005 (RIDA), Pub.L. No. 109-13, Div. B, 119 Stat. 231 (codified as amended at 8 U.S.C. § 1252). Section 106(a) of RIDA eliminated the availability of habeas corpus relief in the district courts for aliens seeking to challenge orders of removal. Instead, Congress substituted petitions for review, filed with the courts of appeals within the first 30 days after issuance of an order of removal, as the sole vehicle whereby aliens could challenge their removal.

Under these new rules, Kolkevich's 30-day window opened on March 21, 2005, but had already closed by the time RIDA was enacted on May 11, 2005, leaving him without a way to timely challenge the BIA's order of removal. Instead, on April 25, 2006 – more than a year after his order of removal (but

6

not quite a year following the RIDA's effective date) – Kolkevich filed a § 2241 habeas petition in the United States District Court for the Eastern District of Pennsylvania. RIDA's jurisdictional provisions prevented the District Court from hearing this petition and, therefore, on May 4, 2006, the District Court transferred Kolkevich's petition to this Court.

The questions before us now are whether Kolkevich may bring his petition at all and, if so, how much time he should be afforded.[1] We conclude that while Kolkevich could have filed an appeal from the BIA's decision, he did not do so in a reasonable time and, therefore, we need not reach the merits of his appeal.

## II. History of Aliens' Challenges to Final Orders of Removal

The issues raised in this case, as well as the parties' arguments, are inseparable from the history of the laws governing how aliens have been able to challenge the final orders of removal[2] entered against them.

---

[1]"This court exercises plenary review over jurisdictional issues." *Bromwell v. Mich. Mut. Ins. Co.*, 115 F.3d 208 (3d Cir. 1997).

[2]We use the terms "final order of removal" and "deportation (continued...)

"Before and after the enactment in 1875 of the first statute regulating immigration [the habeas corpus provision located in 28 U.S.C. § 2241] was regularly invoked on behalf of noncitizens, particularly in the immigration context." *INS v. St. Cyr*, 533 U.S. 289, 305 (2001). Indeed, "[u]ntil the enactment of the 1952 Immigration and Nationality Act, the sole means by which an alien could test the legality of his or her deportation order was by bringing a habeas corpus action in district court." *Id.* at 306; *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("Before 1952, the federal courts considered challenges to the lawfulness of immigration-related detention, including challenges to the validity of a deportation order, in habeas proceedings."). However, habeas was only available to those aliens who had already been detained in anticipation of deportation. *But see infra* note 6. Needless to say, the need for detention as a precondition to an alien's challenge to his or her deportation made it all the more difficult for an alien to bring such a challenge.

This obstacle fell after the enactment of the INA in 1952, when the courts of appeals divided over whether, under that Act, aliens could bring pre-detention actions for declaratory and injunctive relief under § 10 of the Administrative Procedure Act ("APA"). In *Shaughnessy v. Pedreiro*, 349 U.S. 48 (1955), the Supreme Court settled the circuit split by deciding that APA §

[2](...continued)
order" interchangeably.

8

actions were available to aliens seeking to challenge their removal. Nevertheless, nothing in the INA or the APA mentioned habeas or otherwise displaced it. The Supreme Court's ruling in *Pedreiro*, therefore, left the habeas pathway intact and only expanded the options available to aliens.

"Congress feared, however, that the availability of judicial review created by Pedreiro . . . would be abused to extend review beyond reasonable grounds." Hiroshi Motomura, *Immigration Law and Federal Court Jurisdiction Through the Lens of Habeas Corpus*, 91 CORNELL L. REV. 459, 462 (2007). For that reason, Congress amended the INA in 1961 to establish the petition for review process set forth in the Hobbs Act, which governs judicial review for determinations from agencies like the Federal Communications Commission, as the "sole and exclusive procedure" by which aliens could review their deportation orders. *See id*. at 462-63 (quoting Act of September 26, 1961, Pub L. No. 87-301, § 5, 75 Stat. 650, 651 (formerly codified at 8 U.S.C. § 1105a(a)) (repealed 1996)); *see also Foti v. INS*, 375 U.S. 217, 217-20 (1963); *St. Cyr*, 533 U.S. at 309.

In doing so, however, Congress explicitly created an exception for habeas review in § 106(a)(9) – later renumbered § 106(a)(10) – of the 1961 amendment, dictating that "'any alien held in custody pursuant to an order of deportation may obtain review thereof by habeas corpus proceedings.'" *St. Cyr*, 533 U.S. at 309 (quoting 75 Stat. at 651). "While this provision

9

appears to conflict with section 106(a)'s designation of the Hobbs Act as the 'sole and exclusive procedure' for reviewing deportation orders, courts adopted several different ways of limiting the reach of section 106(a)(10), making habeas review of deportation available only in narrow circumstances as a supplement to petitions for review in the courts of appeals." Motomura, *supra* at 463. In short, while each significantly altered the landscape, neither the 1952 Act nor the 1961 amendments eliminated habeas. *See St. Cyr*, 533 U.S. at 309.

This framework remained in place until 1996, when Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 8 U.S.C.) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub L. No. 104-208, Div. C, 110 Stat. 3009-546 (codified as amended in scattered sections of 8 U.S.C.). One provision of AEDPA, § 401(e), and three provisions of IIRIRA, contained in § 306, stripped district courts of jurisdiction to entertain habeas petitions filed by aliens seeking to challenge their removal, and established the petition for review process as the sole avenue by which aliens could challenge deportation orders. Of particular relevance to this case is the provision of IIRIRA, now codified at 8 U.S.C. § 1252(a)(2)(C), which went further, stripping the courts of appeals of jurisdiction to hear petitions for review filed by "criminal aliens," defined as those aliens who had been convicted of multiple crimes, as well as those convicted, *inter*

10

*alia*, of aggravated felonies, drug crimes, and crimes of moral turpitude. *See* 8 U.S.C. § 1252(a)(2)(C) (setting forth an exhaustive list of each of the crimes that triggers "criminal alien" status).

In *St. Cyr*, however, the Supreme Court ruled that IIRIRA had not clearly and unambiguously stripped district courts of § 2241 habeas jurisdiction over the appeals of criminal aliens. The Court reached this conclusion after determining, in part, that to interpret IIRIRA as eliminating *all* forms of judicial review for criminal aliens would be to risk violation of Article I, Section 9, Clause 2 of the Constitution – the "Suspension Clause." *St. Cyr*, 533 U.S. at 305. To avoid such "serious constitutional questions," the Court held that IIRIRA should not be read as eliminating all judicial review for criminal aliens and that, while it explicitly prohibited them from pursuing relief via petitions for review in the courts of appeals, the Act should be interpreted as having preserved the ability of criminal aliens to file habeas in district court. *Id*. at 305-14.

Unfortunately, *St. Cyr* left in its wake a bifurcated system in which criminal aliens followed one path and all other aliens followed another. Indeed, even the criminal aliens' path was fraught with forks and dead ends. "Even with regard to a single removal order, some issues needed to be raised on direct review in the court of appeals, other issues needed to go first to the district court (subject then to appeal by either side), and yet other issues outside the traditional scope of habeas corpus could

11

be precluded altogether." Gerald L. Neuman, *On the Adequacy of Direct Review After The REAL ID Act of 2005*, 51 N.Y.L. SCH. L.REV. 133, 135 (2006).

Congress attempted to address these problems in RIDA. Generally, the immigration provisions of RIDA sought to end the disparity between the way criminal and non-criminal aliens were treated and, additionally, sought to "limit aliens to one bite of the apple with regard to challenging an order of removal" by eliminating district court involvement in the process and by allowing all aliens, including criminal aliens, to challenge an order of removal via petitions for review filed with the appropriate court of appeals. *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005).

Four specific provisions achieve this result or are otherwise of particular importance.

First, RIDA § 106(a)(1)(A)(iii) amended 8 U.S.C. § 1252(a)(2) to include the following:

> (D) JUDICIAL REVIEW OF CERTAIN LEGAL CLAIMS – Nothing in subparagraph (B) [governing issues related to the denial of discretionary relief] or (C) [governing appeals brought by criminal aliens], or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be

12

construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Second, RIDA § 106(a)(1)(B) added the following to the end of 8 U.S.C. § 1252(a):

(5) EXCLUSIVE MEANS OF REVIEW – Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e) [a subsection not relevant to our case]. For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus provision, sections 1361 and 1651

13

of such title, and review pursuant to any other provisions of law (statutory or nonstatutory).

Third, RIDA § 106(b), not codified in the United State Code, sets forth the date upon which RIDA's changes were to take effect:

EFFECTIVE DATE – The amendments made by subsection (a) [including those noted above] shall take effect upon the date of the enactment of this division and shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division.

Fourth, RIDA § 106(c), also not codified in the United States Code, deals with those § 2241 petitions that had already been filed and were pending in district courts:

TRANSFER OF CASES – If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion) to the court of appeals for the circuit in which a petition

14

for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act (8 U.S.C. 1252), as amended by this section, or under section 309(c)(4)(D) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note). The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that

subsection (b)(1) of such section [setting forth the 30-day time limit in which to file a petition for review] shall not apply.

The sum total of these sections, in combination with the pre-existing provisions of § 1252, gives rise to the current system, under which all aliens, including criminal aliens, may challenge the final orders of removal entered against them by filing petitions for review in appropriate courts of appeals within 30 days after the final orders are entered. As noted, those aliens with § 2241 petitions pending in district courts when RIDA was passed may have their cases transferred to the appropriate courts of appeals. Finally, RIDA makes clear that the § 2241 process is no longer available to any alien, criminal or otherwise, seeking to challenge his or her removal.

However, while RIDA provides a pathway for aliens to seek review of post-May 11, 2005 orders of removal, as well as then-pending § 2241 habeas petitions, it is altogether silent as to those aliens who, like Kolkevich, were entitled to file habeas petitions after their removal orders were entered but did not do so. We must now determine how RIDA applies to those aliens.

16

**III. Whether Judicial Review is Available to Kolkevich**

**A. The Parties' Arguments**

The Government's argument is simple. Having failed to file a habeas corpus petition before RIDA, Kolkevich was required to file a petition for review in our Court within 30 days of his final order of removal. He did not do so. Moreover, after RIDA took effect on May 11, 2005, Kolkevich was no longer permitted to file a § 2241 habeas petition. In the Government's view, had Kolkevich acted more quickly and filed a habeas petition before RIDA became law, or had he filed a motion to reconsider with the BIA, he would have had an opportunity to challenge his final order of removal. However, because he took neither of these opportunities, because he failed to file a petition for review within 30 days of receiving his final order of removal, and because he filed a habeas petition after such petitions were disallowed by RIDA, Kolkevich's appeal is misplaced, not timely, and this Court is without jurisdiction to entertain it.

Kolkevich argues that, were we to accept the Government's view, he would be left without any opportunity for judicial review. In Kolkevich's view, he was unable to file a petition for review within 30 days of receiving his final order of removal because, during that 30-day period, RIDA was not yet in effect and, therefore, the previous regime, under which

17

criminal aliens had an unfettered right to file for habeas relief, still governed. When the final order of removal was issued, that right still existed and continued to exist until it was taken away, without replacement, in RIDA. In short, Kolkevich argues that the Government's interpretation of RIDA strips him of any access to the courts and, therefore, constitutes an unconstitutional suspension of the writ of habeas corpus. So that we may avoid finding RIDA unconstitutional, we should, in Kolkevich's view, construe the statute in a way that would permit us to exercise jurisdiction over his appeal.

We are one of very few Courts to have been presented with these arguments.

## B. Relevant Case Law

The dearth of case law on this topic is due, undoubtedly, to the fact that these issues are pertinent only to a very narrow class of aliens. First, only criminal aliens are affected, since it is only that type of alien that had access to habeas review prior to RIDA's enactment. Second, the pool is further reduced to those criminal aliens who, at the time RIDA became effective, had not yet filed their habeas petitions. Nevertheless, some cases have emerged.

The first case is one recently decided by the Court of Appeals for the First Circuit, *Fontes v. Gonzales* ("*Fontes I*"), 483 F.3d 115 (1st Cir. 2007). The procedural and factual history

18

of that case is a tortured one that we need not recount in detail. Suffice it to say that Fontes, also a criminal alien, received his final order of removal on September 30, 2004. He took no immediate action. Then, on May 20, 2005, nine days following the enactment of RIDA, Fontes filed a petition for review. As it has done here, the Government argued that Fontes's petition was time-barred because it was filed more than 30 days after the final order. However, Fontes initially did not raise a Suspension Clause argument, but, instead, argued that the Court should fashion a post-RIDA 30-day "grace period" in which he could bring his claim. The Court ruled that such a grace period was unwarranted and that, therefore, Fontes's appeal was untimely. Although we will discuss the "grace period" issue at greater length below, we note now that the question of *how much* time an alien in Fontes's or Kolkevich's position should receive *if permitted to file* is distinct from the threshold question of whether a criminal alien with a pre-RIDA order of removal *should be permitted to file in the first place*. *Fontes* does not discuss the latter question.

Fontes next filed a petition for panel rehearing and rehearing en banc and, in that petition, raised for the first time the same Suspension Clause argument that Kolkevich raises here. Although the Court of Appeals declined to grant rehearing, relying on the fact that, jurisdiction aside, the Court did not see the substance of Fontes's appeal as meritorious, it recognized that "the Suspension Clause issue is not only of constitutional dimension but also is colorable," and made clear

19

that its decision should not be read to preclude full consideration of such an argument should it be raised and fully briefed in the future. *Fontes v. Gonzales* ("*Fontes II*"), No. 05-1755, 2007 WL 2306977, at *1-2 (1st Cir. Aug. 14, 2007).

In the second case, *Chen v. Gonzales*, 435 F.3d 788 (7th Cir. 2006), the alien received her final order of removal on April 25, 2005 and filed a habeas petition on June 29, 2005, with RIDA intervening as of May 11, 2005. The Court ruled that it did not have jurisdiction over Chen's appeal, essentially adopting the position advanced by the Government in this case: that Chen's appeal was not timely because it was not filed within 30 days of the final order of removal. *Chen* fails to deal with the constitutional issues raised by this particular fact pattern however, and, for that reason, it is unenlightening.[3]

Finally, the United States District Court for the Western District of Texas dealt with similar facts in *Okeezie v. Chertoff* ("*Okeezie I*"), 430 F. Supp. 2d 665 (W.D. Tex. 2006), and again on reconsideration in *Okeezie v. Chertoff* ("*Okeezie II*"), 462 F. Supp. 2d 731 (W.D. Tex. 2006). In *Okeezie I*, the District Court addressed the Suspension Clause issue, holding that RIDA must be interpreted as preserving, rather than destroying, judicial review because to interpret it otherwise would be to risk an unconstitutional suspension of the writ. However, the

---

[3]We would note that, in *Chen*, the alien proceeded *pro se* and the Court of Appeals did not grant oral argument.

District Court changed course on reconsideration in *Okeezie II*, adopting the Government's argument and vacating its opinion in *Okeezie I*. The reason for this change seems rooted in the case's strange procedural posture.

Okeezie received his final order of removal on February 3, 2005, and then, nearly a month after RIDA was passed, filed a petition for review with the Court of Appeals for the Fifth Circuit. Without any discussion, the Court of Appeals granted the Government's motion to dismiss – a motion predicated on the same arguments advanced here. Okeezie then proceeded to file a habeas petition in the Western District of Texas and essentially attempted to relitigate the jurisdictional arguments he had made before the Court of Appeals. Although the District Court initially denied the Government's motion to dismiss in *Okeezie I*, it is clear that, on reconsideration in *Okeezie II*, the District Court realized that there was "a substantial conflict between the Fifth Circuit ruling and the Court's May 4, 2006 Order [in *Okeezie I*]." *Okeezie II*, 462 F. Supp. 2d at 734. Therefore, in order to "[a]her[e] to the Fifth Circuit's dismissal of Okeezie's petition for review," the District Court granted the Government's motion to dismiss. *Id*. at 735.

In sum, though only two known opinions, *Fontes II* and *Okeezie I*, have commented on the Suspension Clause issues raised in this case, both have noted that the Suspension Clause challenge, raised now by Kolkevich, is "colorable," if not

problematic.[4]  Although the issue is one of first impression for this Court,[5] we have previously dealt with other ambiguities in

[4]Other cases dealing with this issue are now pending in the Courts of Appeals for the Second and the Ninth Circuits.  *See Williamson v. Gonzales*, No. 05-3662 (2d Cir. filed July 19, 2005); *Ruiz-Martinez v. Gonzales*, No. 05-2903 (2d Cir. filed June 16, 2005); *Monroy v. Gonzales*, No. 07-75287 (9th Cir. filed Sept. 8, 2005).

[5]We note that our non-precedential opinion in *Scott v. Attorney General*, 171 Fed Appx. 404 (3d Cir. 2006), presents a factual scenario somewhat similar to the one currently before us.  Although we do not typically cite to non-precedential opinions, and although they are not binding precedent in this circuit, *see* Third Circuit Internal Operating Procedure 5.7 (indicating that non-precedential "opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing"), the Government cites it as persuasive authority, and therefore, we believe it appropriate to comment on it here.  In *Scott*, a criminal alien, like Kolkevich, received his final order of removal on April 15, 2005 – less than 30 days before RIDA became law – and filed a § 2241 habeas petition on May 20, 2005.  We ruled that Scott's petition was not timely filed because he failed to file it by May 15, 2005 – 30 days from his final order of removal – despite the fact that the alien was not on notice of the 30-day time limit until four days prior to the period's expiration.  The Government argues that, just as in *Scott*, we should apply the 30-day time limit

(continued...)

22

RIDA.  In *Bonhometre v. Gonzales*, 414 F.3d 442 (3d Cir. 2005), issued just after RIDA's enactment, we discovered that, while RIDA provides for the transfer of habeas petitions pending in district courts at the time of the Act's effective date, it "was silent as to what was to be done with an appeal from a district court habeas decision that is now pending before a court of appeals."  414 F.3d at 446.  *Bonhometre*, of course, dealt with a case falling precisely into that situation.  To resolve the issue, we employed a flexible approach that sought to vindicate Congress's intent "to have all challenges to removal orders heard in a single forum (the court of appeals)" and, therefore

---

[5](...continued)

strictly in this case, especially because, as the Government suggests, *Scott* presented facts "more sympathetic" to the alien than those presented here.  Br. for Appellee at 21.  However, Scott had *some* opportunity for judicial review.  Here, were we to accept the Government's interpretation of RIDA, Kolkevich would have *no* opportunity for judicial review.  Therefore, it is hard for us to imagine how the facts of this case are *less sympathetic* than those in *Scott*.  Indeed it is this difference – Scott had time to file and Kolkevich did not – that distinguishes *Scott* from the case before us.  While it may be that, in *Scott*, we did not explore whether a four-day petition for review filing period was constitutionally sufficient, that question is simply not presented here.  Here, we must address whether an alien can be stripped of *any opportunity* for judicial review.  Therefore, both *Scott*'s non-precedential status and its significant differences render the case irrelevant to the issue before us.

23

determined that "those habeas petitions that were pending before this Court on the effective date of the REAL ID Act are properly converted to petitions for review and retained by this Court." *Id*. To effect this conversion, we decided that we would disregard the District Court's habeas decision and move forward as if it had never happened. Although this case does not implicate precisely the same issues, *Bonhometre* counsels that we should eschew a formalistic reading of RIDA in favor of one that seeks to fulfill Congress's broader goals and purposes. We believe that such an approach is similarly called for here.

## C. Discussion

Our analysis begins with the Suspension Clause. Article I, Section 9, Clause 2 of the Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." "Because of that Clause, some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'" *St. Cyr*, 533 U.S. at 300 (quoting *Heikkila v. Barber*, 345 U.S. 229, 235 (1953)). However, the Suspension Clause does not require Congress to guarantee aliens the right to petition for habeas in a district court at all times and under all circumstances. For example, there is no question that the current regime, in which aliens may petition for review in a court of appeals but may not file habeas, is constitutional. This is because "the substitution of a new collateral remedy which is

24

both adequate and effective" satisfies the requirements of the Suspension Clause. *Swain v. Pressly*, 430 U.S. 372, 381 (1977).

In *St. Cyr*, the Supreme Court confronted a situation nearly identical to the one before us. The provisions of AEDPA and IIRIRA at issue in that case threatened to strip criminal aliens of all judicial review, if read as the INS then suggested. Rather than read those acts as doing so – an interpretation that, in the Supreme Court's view, would have risked violation of the Suspension Clause – the Court interpreted the statutes as preserving review. Indeed, the Court made clear that even having to *inquire* into the relationship between habeas corpus and immigration was enough to counsel against a reading of AEDPA and IIRIRA that would deny aliens review. *St. Cyr*, 533 U.S. at 301 n.13 ("The fact that this Court would be required to answer the difficult question of what the Suspension Clause protects is in and of itself a reason to avoid answering the constitutional questions that would be raised by concluding that review was barred entirely."). Here, if we accept the Government's position and conclude that Kolkevich's right to judicial review was lost when he failed to file a petition for review within 30 days after the issuance of his removal order, we would undoubtedly face exactly the "serious constitutional question[]" regarding the Suspension Clause that the Supreme Court faced in *St. Cyr* because, as of May 11, 2005, Kolkevich was left without any opportunity for judicial review of his order of removal.

25

Prior to RIDA's enactment, Kolkevich could not have filed a petition for review with this Court because no such relief was available. *See* 8 U.S.C. § 1252(a)(2)(c). After RIDA became law and criminal aliens were granted the ability to file petitions for review, more than 30 days had elapsed since Kolkevich received his final order of removal and, therefore, the petition for review process never became available to him. Additionally, according to the Government's interpretation Kolkevich could no longer file a § 2241 petition after RIDA's enactment. In short, under the Government's reading of RIDA Kolkevich went from a position where, on May 10, 2005, he could have filed habeas to a position where, on May 11, 2005, he could have filed neither habeas nor the substitute to habeas provided by Congress. Therefore, the Government's interpretation of the statutory scheme put in place by RIDA would deny Kolkevich any opportunity for judicial review.

The Government's arguments to the contrary are entirely unpersuasive. First, it argues that Kolkevich could have filed a motion for reconsideration of his removal order with the BIA pursuant to 8 C.F.R. § 1003.2(b) and that this would have sufficed as a form of judicial review. However, "[a]t its historical core, the writ of habeas corpus has served as a means of *reviewing the legality of Executive detention*, and it is in that context that its protections have been strongest." *St. Cyr*, 533 U.S. at 301 (emphasis added). A motion to reconsider before the BIA is simply another point on the continuum of Executive action – it does not constitute *judicial review* of Executive

26

action. Indeed, the Government's argument is akin to saying that an appeal from the IJ to the BIA is an effective alternative to habeas because the BIA reviews the IJ. A motion to reconsider, like the BIA's review of an IJ, is simply another phase of an administrative agency's adjudicative process – it is not a collateral proceeding designed to review the legality of that process. Furthermore, the agency's consideration of such a motion is clearly narrower in scope than a court's "review" function. Therefore, a motion to reconsider pursuant to 8 C.F.R. § 1003.2 is not an "adequate and effective" substitute for habeas.

Second, the Government argues that Kolkevich could have had judicial review of the BIA's decision had he filed his § 2241 petition during the 51-day period between the BIA's final order, on March 21, 2005, and the enactment of RIDA, on May 11, 2005. The Government concedes, and it is not disputed, that Kolkevich was under no obligation to file his § 2241 petition within that 51-day period or, in fact, within *any* period. On the day before President Bush signed RIDA, Kolkevich had a clear and unfettered right to file a habeas petition – a right neither extinguished nor diminished by his choice not to file up until that point.[6] On May 11, 2005, that

---

[6]Under § 2241, an individual is required to be "in custody under or by authority of the United States" in order to file a habeas petition. 28 U.S.C. § 2241(c)(1). Although Kolkevich
(continued...)

27

right was taken away. To say that Kolkevich could have filed *before* RIDA was passed simply does not address whether, *after* RIDA became law, Kolkevich's right to habeas had been replaced with an "adequate and effective substitute."

Given the Government's failure to explain how, following RIDA, Kolkevich continued to have access to habeas or an alternative to it, the Government's argument – that we are without jurisdiction to hear Kolkevich's appeal – presents us with two options. The first is to declare RIDA unconstitutional as applied to Kolkevich and remand the case to the District

---

[6](...continued)

is, and has been, "in custody," his confinement is under the authority of the Commonwealth of Pennsylvania, not that of the United States. Although this distinction is generally a meaningful one for § 2241 purposes, it is irrelevant here, where the "custody" at issue is not Kolkevich's current confinement but, rather, the "restraint on liberty" that arises out of his order of removal. "[A]n individual subject to a final deportation order issued by the INS or its successor agency is in custody for § 2241 purposes." *Kumarasamy v. Att'y Gen.*, 453 F.3d 169, 173 (3d Cir. 2006); *see also Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 735 (5th Cir. 2005) ("As the Supreme Court recently noted [in *Padilla v. Rumsfeld*, 42 U.S. 426, 437 (2004)], physical detention (or here, physical detention by federal, rather than state, authority) is no longer required for a petitioner to meet the custody requirement and obtain habeas relief.").

28

Court for habeas proceedings. This option is not a favorable one. As the Supreme Court made clear in *St. Cyr*, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems." *St. Cyr* at 299-300 (internal quotations and citations omitted). This directive leads us to the second option: adopt an "alternative interpretation" of RIDA that would allow Kolkevich review of his final order of removal in a court of appeals. Because such an "alternative interpretation" of RIDA is "fairly possible," the second option is the best course.

We should follow the first option only if we are convinced that Congress intended to eliminate all the habeas rights of an alien in Kolkevich's position. The Supreme Court has made clear that we should analyze statutes that could be read as infringing on habeas rights with special scrutiny. "Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." *Id.* at 299. We are also mindful of "both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *Id.* at 298. Here, although the Government's interpretation of RIDA may be an "acceptable construction" of the statute, the Act nevertheless does not contain a "specific and unambiguous statutory

29

directive[]" sufficiently communicating Congress's intent to deprive Kolkevich of all judicial review, such that we can conclude that, in RIDA, Congress took the extraordinary step of suspending the writ with respect to those who, like Kolkevich, received final orders of removal more than 30 days prior to the Act's enactment.

Although RIDA § 106(b) indicates that the Act "shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of . . . enactment," this is the only portion of the Act that specifically addresses those who received final orders of removal prior to the Act's enactment. And yet, this section contains nothing about habeas, nothing about the Suspension Clause, and nothing about judicial review. In fact, to conclude that RIDA has suspended the writ with respect to Kolkevich, one must look to the interplay of three different provisions: RIDA § 106(b), indicating that RIDA shall apply to all prior orders of removal; RIDA § 106(a)(1)(B), now codified at 8 U.S.C. § 1252(a)(5), indicating that petitions for review are to "be the sole and exclusive means for judicial review of an order of removal"; and 8 U.S.C. § 1252(b)(1), indicating that a "petition for review must be filed not later than 30 days after the date of the final order of removal." Indeed, the last of these provisions, 8 U.S.C. § 1252(b)(1), pre-dated RIDA. Therefore, rather than there being one "clear indication" of Congressional intent, there is instead a patchwork of different statutes that, individually, have no direct effect on Kolkevich's appeal and

30

that only produce such an effect when read in combination.  To emerge from this statutory labyrinth with the conclusion that Congress sought to deprive Kolkevich of his right to habeas would be to rely on exactly the sort of "[i]mplications from statutory text" that, in *St. Cyr*, the Supreme Court said were insufficient to communicate a suspension of the writ.

Additionally, RIDA's legislative history makes clear that, rather than intending it to deprive aliens of judicial review, Congress saw the Act as a vehicle by which it could ensure that all aliens received an equal opportunity to have their challenges heard.  In the House Report accompanying RIDA, Congress made clear that

> [u]nder section 106, all aliens who are ordered removed by an immigration judge will be able to appeal to the BIA and then raise constitutional and legal challenges in the courts of appeals.  *No alien, not even criminal aliens, will be deprived of judicial review of such claims.  Unlike AEDPA and IIRIRA, which attempted to eliminate judicial review of criminal aliens' removal orders, section 106 would give every alien one day in the court of appeals, satisfying constitutional concerns*.  The Supreme Court has held that in supplanting the writ of habeas corpus with an alternative scheme, Congress need only provide a scheme which is an "adequate and effective" substitute for habeas

31

corpus. Indeed, in St. Cyr . . ., the Supreme Court recognized that "Congress could, without raising any constitutional questions, provide an adequate substitute through the court of appeals." By placing all review in the courts of appeals, [RIDA] would provide an "adequate and effective" alternative to habeas corpus.

H.R. Rep. No. 109-72, at 174-75 (internal citations omitted) (emphasis added). Not only does the House Report demonstrate that Congress had no desire to deprive any alien of his or her right to judicial review of a removal order, it clearly indicates that Congress acted to preserve review for "every alien." Moreover, the House Report explicitly demonstrates Congress's intention to craft legislation that comported with the Suspension Clause as well as the holding in *St. Cyr*. In light of these exceedingly clear statements, and the ambiguity in the statutory scheme, we simply cannot say that Congress intended to risk running afoul of the Suspension Clause by suspending the writ of habeas corpus with respect to the small class of aliens who received final orders of removal more than 30 days prior to the enactment of RIDA.

For these reasons, we conclude that RIDA must be interpreted as permitting an avenue of appeal for Kolkevich. Specifically, we conclude that RIDA § 106(c) should be read to permit the transfer from a district court to a court of appeals not only of those habeas petitions that were pending in the district

32

court at the time RIDA became law, but also those that could have been brought in a district court prior to RIDA's enactment, but were not. We further hold that the 30-day time limit in 8 U.S.C. § 1252(b)(1) should not be interpreted as applying to those aliens who received final orders of removal prior to the enactment of RIDA, but who did not file a petition for review directly in a court of appeals until after the enactment of RIDA. As we will explain, however, this does not mean that aliens who received orders of removal before RIDA have an unlimited time to bring their appeal after RIDA.

### III. Time Limit

The question of whether a criminal alien in Kolkevich's position should be permitted to file an appeal from his final order of removal is distinct from the question of *how much* time he should be afforded in which to do so. Kolkevich not only argues that he should be able to file, but, at oral argument, suggested that he had unlimited time to bring his appeal. Although we agree with Kolkevich that he should be afforded an opportunity to challenge the final order of removal entered against him, we disagree that such an opportunity knows no temporal bounds.

We dealt with an analogous situation following the enactment of AEDPA, which created a one-year period for state and federal prisoners who wanted to challenge their confinement via habeas corpus in federal court. In *Morton v. Burns*, 134 F.3d

33

109 (3d Cir. 1998), we addressed how this filing deadline should be applied to those prisoners whose claims had accrued prior to AEDPA's enactment and, ultimately, agreed with nearly every other court of appeals that such prisoners should have one year from the effective date of the statute within which to file their claims.[7] 134 F.3d at 111-12. Indeed, although *Morton* did not rely specifically on any previous Supreme Court precedent, many of the cases to which *Morton* cited approvingly, especially *Duarte v. Hershberger*, 947 F. Supp. 146 (D.N.J. 1996), located the one-year grace period rule within the broader context of the Supreme Court's jurisprudence on statutes of limitation.

*Duarte* discussed the Supreme Court's statute of limitations jurisprudence and determined that revised statutes that extinguish live claims must provide a "reasonable time" for pre-revision claimants to file. *Duarte* looked particularly to *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), and the case on which *Texaco* relied, *Wilson v. Iseminger*, 185 U.S. 55 (1902). In *Wilson*, for instance, the Court stated:

> [i]t may be properly conceded that all statutes of limitation must proceed on the idea that the party

---

[7]We noted that the Court of Appeals for the Second Circuit "articulated a somewhat more flexible rule that a habeas petitioner must be afforded a 'reasonable time' after [AEDPA's enactment] to file his petition." *Morton*, 134 F.3d at 111 (citing *Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir. 1997)).

has full opportunity afforded him to try his right in the courts. A statute could not bar existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice.

*Wilson*, 185 U.S. at 62-63.

With this in mind, *Duarte* set out to determine what a "reasonable time" was and determined that "[w]here a shortened limitations period would bar pre-accrued claims, other circuits have provided claimants the shorter of: (1) the pre-shortened limitation period, commencing at the time the action accrued; or (2) the shortened limitation period, commencing from the date the statute became effective." *Duarte*, 947 F. Supp. at 149 (citing cases from the Courts of Appeals for the 5th, 7th and 9th

35

Circuits). *Duarte*, therefore, adopted the one-year grace period of which we approved in *Morton* and which, essentially, became the law across the circuits.

We believe a similar approach is warranted here. Therefore, under *Morton* and *Duarte*, we will provide pre-RIDA claimants with the lesser of either the pre- or the post-RIDA filing period. In this case, the pre-RIDA filing period is the one applicable to § 2241 habeas petitions, which, as discussed, was infinite. The post-RIDA filing period is the one applicable to petitions for review and is 30 days. Therefore, following *Morton* and *Duarte*, those in Kolkevich's situation shall be afforded 30 days from the date of RIDA's enactment to bring their claims – that is, until June 11, 2005. Of course, this date has long passed. Only those who filed their petitions for review by that date will be allowed to proceed in this Court.

We believe that this 30-day period is reasonable. As is made clear by the House Report, one of Congress's primary concerns in passing RIDA was to ensure that criminal aliens received the same type and amount of judicial review as other aliens. Were we to allow a grace period of longer than 30 days – for instance, six months or one year – a criminal alien who received his final order of removal on May 10, 2005 would receive more time to file his petition than a criminal alien, or even a non-criminal alien, ordered removed on May 12, 2005.

36

This is exactly the sort of disparity that Congress sought to avoid by passing RIDA.[8]

The implications of this rule for our case are clear. Kolkevich failed to file within 30 days of the enactment of RIDA, and his appeal is therefore foreclosed. Accordingly, we are without jurisdiction to consider Kolkevich's request for review.[9]

---

[8]In a case currently pending in the Court of Appeals for the Ninth Circuit, *Monroy v. Gonzales*, the ACLU is arguing as amicus that "the Court should hold that the 30-day deadline runs from the date on which aliens removable on the basis of a criminal conviction became eligible to file petitions for review (May 11, 2005, when the REAL ID Act took effect), and that such aliens have a reasonable period from that date to file their petitions in this Court. And because Mr. Monroy filed his petition for review within 30 days of that date, this Court can reserve the question of what would constitute a reasonable period beyond 30 days." Brief for American Civil Liberties Union Immigrants' Rights Project as Amicus Curiae Supporting Petitioner, *Monroy v. Gonzales*, No. 07-75287, (9th Cir. June 26, 2006), 2006 WL 2450900, at *1-2. As we have said, we believe 30 days to be a reasonable time.

[9]At oral argument, counsel for Kolkevich suggested that applying the 30-day grace period to his client would be "unfair" and that such a rule should be applied only in a purely prospective fashion – that is, to future litigants, but not to him.

(continued...)

37

However, as some commentators have noted, it is unclear whether we have the power to do so in light of the Supreme Court's decision in *Harper v. VA Department of Taxation*, 509 U.S. 86 (1993). *See Harper*, 509 U.S. at 97 ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."). *See* RICHARD H. FALLON, JR. ET AL., HART AND WESCHLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 76 (5th ed. 2003) (noting that much of *Harper*'s reasoning "raises doubts that the Court would regard purely prospective adjudication as legitimate"). We need not express any opinion on that issue here, however, for, even assuming that pure prospectivity remains an option, application of that doctrine to the present case would be inappropriate. To apply a ruling in a purely prospective fashion, we must be convinced: (1) that the decision establishes "a new principle of law, either by overruling clear past precedent on which litigants may have relied" or decides "an issue of first impression whose resolution was not clearly foreshadowed"; (2) that application of the new rule retroactively would "further or retard" the rule's operation; and (3) that the equities cut in favor of prospective application. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-107 (1971).

In this case, the third factor cuts decidedly against
(continued...)

## IV. Conclusion

For the reasons set forth, we will DISMISS the Petition for Review.

---

[9](...continued)

Kolkevich. When President Bush signed RIDA on May 11, 2005, Kolkevich was put on notice that a significant change to our immigration laws had taken place – a change that had a clear, and grave, effect on his prospects for judicial review and his future. Despite this knowledge, Kolkevich not only failed to file immediately, he sat on his appeal until nearly one year after RIDA had been passed and until more than one year after the issuance of his final order of removal. Given that RIDA clearly expressed Congress's intention to cut short the filing time afforded criminal aliens under § 2241, Kolkevich should have been aware that something was afoot. In light of his failure to act, we cannot say that the equities cut in Kolkevich's favor and, therefore, cannot determine that he should be exempted from this ruling.