**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2048
_____

PHILLIP A. MOODIE,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-439-880)
Immigration Judge:  Honorable Jesus Clemente
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 13, 2011
Before:  RENDELL, CHAGARES AND ALDISERT, Circuit Judges

(Opinion filed:  October 14, 2011)
_____

OPINION
_____

PER CURIAM

Phillip Moodie, a citizen of Jamaica, seeks review of a decision of the Board of

Immigration Appeals ("BIA") upholding the denial of his application for asylum,

withholding of removal, and protection under the Convention Against Torture ("CAT").

For the following reasons, we will deny the petition for review.

## I.

Moodie entered the United States most recently on January 30, 2008. In April 2010, he was detained by federal immigration authorities after he was arrested on a state charge and placed in removal proceedings for overstaying his visa. He conceded removability, but filed an application for asylum, withholding of removal, and protection under the CAT based on his fear that, if returned to Jamaica, he would be persecuted by drug dealers because he had worked as a confidential informant for Immigration and Customs Enforcement ("ICE").

Moodie claimed that, beginning in the summer of 2007, he served as an informant to ICE Special Agent Vance Callender. At a hearing before an Immigration Judge ("IJ"), he testified that he met with Callender three times and provided information on numerous drug dealers that he acquired through a friend who worked as a disc jockey at the drug-dealers' parties. In November 2007, Moodie travelled to the United States on a work visa. He testified that, when he returned to Jamaica on January 28, 2008, he learned from his friends, Jason and Floyd, that the drug dealers upon whom he informed had placed him on a hit list. Additionally, his apartment in Jamaica had been broken into, and he assumed that the drug dealers were responsible because the place was ransacked and his furniture destroyed. Moodie returned to the United States two days later and subsequently terminated his relationship with Callender. In support of his claims, he prepared a list of individuals, including the Prime Minister of Jamaica, upon whom he had allegedly informed.

2

On cross-examination, the government introduced an email from Callender stating that Moodie wanted to be an informant but that he had no useful information. Callender added that Moodie "only was trying to get a visa" and that he "did absolutely no work for ICE and constantly tries to use his association with ICE (which consists of one meeting) to get around." (R. 253.) After being presented with the email, Moodie asked the IJ for an opportunity to produce email correspondence between himself and Callender, which the IJ found to be a dilatory tactic and denied because of the last-minute nature of the request. On the same basis, the IJ denied Moodie's request to subpoena Callender and another ICE agent who allegedly spoke with Callender at Moodie's request, observing that Moodie had plenty of time to submit subpoenas before the hearing but did not do so.

The IJ concluded that Moodie's asylum claim was time-barred and rejected his remaining claims based upon his finding that Moodie did not testify credibly. Accordingly, the IJ ordered Moodie removed to Canada with the United Kingdom as an alternate, per Moodie's request, but also designated Jamaica as an alternate in the event the other countries did not accept him. The BIA dismissed Moodie's appeal, essentially adopting the IJ's decision in its entirety, and declined to remand based on additional documents that Moodie submitted, which included subpoenas for the witnesses he was precluded from presenting at the hearing. Moodie filed a timely pro se petition for review.

II.

This Court has jurisdiction to review the final order of removal pursuant to 8 U.S.C. § 1252. However, our review is limited to Moodie's withholding of removal and CAT claims because we lack jurisdiction to review the agency's determination that Moodie's asylum application is untimely.[1] See 8 U.S.C. § 1158(a)(3); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). We review the findings upon which the BIA's decision rests for substantial evidence, but exercise de novo review over the BIA's legal conclusions and Moodie's due process claims. Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010); Abdulrahman v. Ashcroft, 330 F.3d 587, 595-96 (3d Cir. 2003). We may review the IJ's decision because it was implicitly adopted by the BIA. See Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005).

Moodie contends that the agency erred in finding his testimony not credible. We, however, conclude that the IJ's adverse credibility finding was supported by "specific, cogent reasons" for discrediting Moodie's testimony. Thu v. Att'y Gen., 510 F.3d 405, 412 (3d Cir. 2007) (quotations omitted). The IJ found that Moodie lied about serving as an informant due to Callender's email to the contrary. Additionally, the IJ found Moodie's testimony concerning his alleged persecution by drug dealers not to be credible because (1) he failed to provide any details regarding the drug organization that he

---

[1] We also lack jurisdiction to consider Moodie's challenges to his detention, which must be pursued in a petition for habeas corpus. See Nnadika v. Att'y Gen., 484 F.3d 626, 630-33 (3d Cir. 2007). Nor may we consider his allegations that his constitutional rights were violated during the course of his state criminal proceeding.

allegedly fears; (2) despite testifying that he knew Jason and Floyd since before high school, Moodie, who was 27 years old when he encountered them in Jamaica, did not know their surnames; (3) it was implausible that Jason and Floyd would know of a threat against Moodie based solely on the fact that they are "street kids" who "know everything"; (4) Moodie's assertion that drug dealers broke into his apartment was mere speculation; and (5) Moodie could have compiled his list of drug dealers from information in the public domain. (R. 59-63.)

Moodie does little to undermine those reasons, other than stating his belief that he testified credibly and questioning the IJ's conclusion that his list of alleged drug dealers could have been fabricated. But even removing that reason from the calculus, the IJ's remaining reasons for rejecting Moodie's testimony are firmly supported by the record and justify the adverse credibility determination.[2] See Chen v. Ashcroft, 376 F.3d 215, 226 (3d Cir. 2004). Accordingly, the agency appropriately rejected Moodie's claims based on the IJ's adverse credibility finding.

Moodie also alleges myriad due process violations, many of which are grounded in his inability to call witnesses or produce information establishing that he was, in fact, an ICE informant.[3] We lack jurisdiction to consider Moodie's allegation that the IJ

---

[2] Because Moodie filed his application after the enactment of the REAL ID Act, the inconsistencies, inaccuracies, or falsehoods upon which the IJ's adverse credibility finding is based need not go the heart of his claims. See § 1158(b)(1)(B)(iii). Regardless, the inconsistencies, inaccuracies, or falsehoods relied on by the IJ in finding Moodie not credible do, in fact, go to the heart of his claims.

[3] We agree with the government that, to the extent Moodie alleges violations of

violated his due process rights by denying his request to subpoena witnesses because Moodie failed to challenge that procedural ruling before the BIA.[4] See Khan v. Att'y Gen., 448 F.3d 226, 236 n.8 (3d Cir. 2006). We also reject Moodie's contention that the BIA violated due process by failing to acknowledge his subpoenas or mandate "an all-out investigation by the Department of Justice." The BIA has no authority to subpoena witnesses or order the Department of Justice to conduct an internal investigation, and generally may not consider new evidence on appeal.[5] See Sheriff v. Att'y Gen., 587 F.3d 584, 592 (3d Cir. 2009); see also 8 C.F.R. § 1003.1(d)(3)(iv). Furthermore, the BIA acted within its discretion in refusing to remand based on Moodie's belated subpoenas, especially since there is no indication that his witnesses would have changed the outcome of his case. See Caushi v. Att'y Gen., 436 F.3d 220, 231 (3d Cir. 2006); see supra n.4.

Moodie's remaining due process claims also lack merit. First, although the IJ could have been more lenient with Moodie, nothing in the record reflects bias or

additional constitutional rights without describing the basis for those violations, he has waived those claims. See United States v. Hoffecker, 530 F.3d 137, 161 (3d Cir. 2008).
[4] Even if he had raised the issue, Moodie cannot establish substantial prejudice, as is necessary to prevail on his due process claim. See Delgado-Sobalvarro v. Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010). Assuming that Moodie's witnesses would have testified to his status as an ICE informant, which is unlikely, Moodie still cannot overcome the IJ's finding that he failed to testify credibly concerning the January 2008 events that form the basis for his withholding of removal and CAT claims. Furthermore, Moodie had a sufficient opportunity to request witnesses before the hearing, but never applied for a subpoena or asked the IJ for an extension so that he could pursue additional evidence. See 8 C.F.R. §§ 1003.35 & 1003.31(c).
[5] The subpoenas that Moodie submitted to this Court in support of his petition for review are equally futile, as our review is limited to the administrative record. See 8 U.S.C. § 1252(b)(4)(A).

6

improper conduct so as to support a conclusion that the IJ abandoned his role as a neutral fact-finder. See Wang v. Att'y Gen., 423 F.3d 260, 267-70 (3d Cir. 2005); Abdulrahman, 330 F.3d at 596-97. Second, Moodie's assertion that the BIA violated due process by failing to consider all of the evidence – which seems to be based solely on the fact that the agency rejected his claims – lacks merit because the adverse credibility finding upon which the BIA's decision rests is supported by the record. Third, we have rejected the applicability of a state-created danger theory in immigration cases, so Moodie is not entitled to any relief on that basis. See Kamara v. Att'y Gen., 420 F.3d 202, 217-18 (3d Cir. 2005). Finally, we reject Moodie's claim that the BIA violated Federal Rule of Appellate Procedure 34 as well as his procedural due process rights because one Board member denied his request for oral argument instead of a three-judge panel.[6] Rule 34 is inapplicable to the BIA, which is instead governed by 8 C.F.R. § 1003.1(e), and the BIA clearly complied with that regulation in rejecting Moodie's request for oral argument. See § 1003.1(e)(7) ("No oral argument will be allowed in a case that is assigned for disposition by a single Board member.").

For the above reasons, we will deny Moodie's petition for review.

---

[6] The government contends that we lack jurisdiction to address that claim. To the contrary, we have jurisdiction over claims that the agency violated its own procedural rules, which is the apparent basis for Moodie's allegation here. See Purveegiin v. Gonzales, 448 F.3d 684, 688-92 (3d Cir. 2006) (jurisdiction existed over claim that BIA was required to refer petitioner's case for three-member review); see also Billeke-Tolosa v. Ashcroft, 385 F.3d 708, 709 (6th Cir. 2004).